**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Walter L.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; Joel Brott, *Sheriff of Sherburne County Jail*,

Respondents.

File No. 26-CV-4503 (JMB/SGE)

**ORDER**

---

Jacob R. Peterson, Zimmer Law Group, LLC, St. Paul, Minnesota, for Petitioner Walter L.

David W. Fuller and Derek Ganzhorn, United States Attorney's Office, Minneapolis, Minnesota, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Walter L.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Joel Brott

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

1. Walter L. is a 31-year old native and citizen of Honduras. (Doc. No. 8-1 at 1; Pet. ¶ 14.)

2. On or around July 28, 2020, Walter L. entered the United States without inspection at the U.S.-Mexico border in Texas. (Doc. No. 8-1 at 3; Pet. ¶ 2.)

3. Walter L. has a pending application for asylum, which has been pending since June 2025. (Doc. No. 8-1 at 3.)

4. Less than one year ago, the United States Citizen and Immigration Services (USCIS)—an agency that, like Immigration and Customs Enforcement (ICE), is part of the Department of Homeland Security (DHS)[2]—issued Walter L. authorization to work in the United States through June 2027. (Doc. No. 8-1 at 3; Pet. ¶ 16.)

5. Walter L. works as a laborer for a construction company in Minneapolis. (Doc. No. 8-1 at 2; Pet. ¶ 16.)

6. Walter L. has no criminal history. (Doc. No. 8-1 at 3; Pet. ¶ 19.)

7. On October 9, 2026, ICE Supervisory Detention and Deportation Officer Randy Langworthy and ICE Detention Officers Haeg, Witt, Ball, and Borgen "were

---

[2] *See Organizational Chart*, Dep't of Homeland Sec., https://www.dhs.gov/organizational-chart (last viewed Oct. 21, 2026); *see also Operational and Support Components*, Dep't of Homeland Sec., https://www.dhs.gov/operational-and-support-components (last viewed Oct. 21, 2026) (describing USCIS as "the federal agency that oversees lawful immigration to the United States").

working fugitive operations"[3] in Brooklyn Park, Minnesota. (Doc. No. 8-1 at 2.) At 7:47 a.m., Langworthy checked the plates of a white car that drove past them; the car was registered to Walter L. (*Id.*) After determining through "[r]ecord checks"[4] that the car's registered owner was "an illegal alien," ICE agents "followed the vehicle briefly and conducted a vehicle stop."[5] (*Id.*)

---

[3] Respondents nowhere define or explain the meaning of the term "fugitive operations." The Court is concerned that this term and others like it (e.g., "targeted enforcement operation") are not, in fact, accurate descriptions of the activities of the federal officers involved. In many immigration habeas cases that the Court has recently reviewed (and as it appears was the case here), federal officers taking a petitioner into custody have no knowledge of the petitioner's identity prior to initiating contact with the petitioner. Thus, despite the term "fugitive" used, many petitioners are not fugitives and the ICE "operation" is not targeted to that specific person. *See* Merriam-Webster.com (retrieved Oct. 21, 2026) (defining "fugitive" as "a person who flees or tries to escape;" or "something elusive or hard to find"); Black's Law Dictionary (12th ed. 2024) (defining "fugitive" as "[a] criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding"). Not only are such terms disingenuous—or even fraudulent—representations when used to describe conduct such as checkpoints or license plate checks, they also potentially violate the Fourteenth Amendment if officers are only checking license plates of vehicles driven by people who present as Black, Latino, or members of another ethnic or racial group because it is well-established that the Equal Protection Clause of the Fourteenth Amendment prohibits selective enforcement of the law based on considerations such as race, ethnicity, or religion. *E.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016).

[4] The record contains no evidence concerning what records were reviewed, what information they contained, or how this information is collected.

[5] The Court observes that, given Walter L.'s pending asylum matter, USCIS's very recent issuance of a work permit to him, and the fact that Walter L. had a Minnesota driver's license and a vehicle registered to his name (*see* Doc. No. 8-1), Walter L.'s identity and location was known to multiple government agencies and he cannot fairly be characterized as a "fugitive" who is subject to investigation during so-called "fugitive operations."

8. During the traffic stop, ICE officers told Walter L. that he was being taken into custody because his asylum case had been pending for too long and that they would speed up adjudication by taking him into custody. (Pet. ¶ 17.)

9. Officers detained Walter L. without a warrant. (Doc. No. 8-1 at 2 ("A warrantless arrest was performed on [Walter L.].")

10. During booking, Walter L. claimed fear of return to Honduras. (*Id.*)

11. At some unknown time, during or after booking on October 9, 2026, Langworthy issued a Form I-200 administrative warrant. (*See* Doc. No. 8-2.)

12. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (*Id.*) Thus, Respondents detained Walter L. pursuant to their authority under 8 U.S.C. § 1226.

13. At some unknown time on October 9, 2026, after Langworthy issued the Form I-200, Borgen served it on Walter L. (*Id.*)

14. Additionally, at some unknown time after booking on October 9, 2026, Borgen served Walter L. with a Form I-862 Notice to Appear (NTA), which charges Walter L. with being removable under INA § 212(a)(6)(A)(i), (a)(7)(A)(i)(I) for being in the United States without having been admitted or paroled and for not having valid entry documents. (Doc. No. 8-3.) There is no time stamp on the NTA, and the NTA was issued at Fort Snelling, Minnesota, a separate location from where Respondents took Walter L. into custody. (*Id.*)

15. Walter L. has been detained in ICE custody since October 9, 2026. (*See* Pet.)

16. On October 13, 2026, Walter L. filed a pro se petition for writ of habeas corpus, by which Walter L. sought immediate release on grounds that ICE detained him in violation of the Fifth Amendment of the U.S. Constitution. *Walter L. v. Director of ICE*, No. 26-CV-4430, Doc. Nos. 1, 1-1 (D. Minn. Oct. 13, 2026).

17. On October 15, 2026, after retaining counsel, Walter L. filed the Petition via counsel. (*See* Pet.)

18. On October 19, 2026, the Court ordered Respondents to file a response to the Petition on or before 11:00 a.m. on October 21, 2026. (Doc. No. 5.) The Court expressly ordered that Respondents make an affirmative statement whether Respondents complied "with the Immigration and Nationality Act and accompanying regulations when they took Petitioner into custody." (*Id.*)

19. On October 20, 2026, Respondents filed their response to the Petition. (Doc. Nos. 7, 8.)

**DISCUSSION**

In his Petition, Walter L. seeks immediate release or, in the alternative, a bond hearing, arguing that his detention under Respondents' implementation of 8 U.S.C. § 1225(b)(2) violates the Due Process Clause of the Fifth Amendment. In response to the Petition, however, Respondents argue that their detention of Walter L. comports with the requirements of due process and the terms of 8 U.S.C. § 1225(b)(2). For the reasons set forth below, the Court grants the Petition.

**A. Right to Habeas Relief**

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Walter L. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 8-2.) In response to the Petition, however, Respondents advance a different basis for the detention of Walter L.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory

detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry); *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180, No. 25-6842, 2026 WL 2196424, at *9, 16 (9th Cir. July 30, 2026) (rejecting Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

This Court concludes that Respondents cannot now change the basis for the detention of Walter L. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which Walter L.'s detention is based, the Court concludes that the Respondents detained Walter L. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C. Violation of Applicable Regulatory and Statutory Requirements

Having determined that Respondents have detained Walter L. pursuant to 8 U.S.C. § 1226, the Court considers whether Walter L. was brought into custody pursuant to a valid

warrant or pursuant to an authorized warrantless arrest.[6] For the reasons discussed below, the Court concludes he was not.

Agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless arrest procedures. 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); *see also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general procedures" for all "enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, Respondents violated applicable regulatory and statutory requirements in at least four respects.

First, the warrant is invalid because there are unspecified facts that Respondents point to as their basis for establishing probable cause for taking Walter L. into custody. The warrant relied on "biometric confirmation of the subject's identity and a records check of federal databases" as the determination for probable cause. (Doc. No. 8-2.) The Respondent's Form I-213 record for Walter L. states as follows: "Record checks revealed the registered owner of the [vehicle] was an illegal alien, present in the United States without inspection." (Doc. No. 8-1 at 2.) However, this record includes no information

[6] Although the Court ordered Respondents to address whether the detention of Walter L. complied with the Immigration and Nationality Act and accompanying regulations (Doc. No. 5), Respondents make no argument that they complied with 8 U.S.C. § 1357, 8 C.F.R. § 287.8, or § 236.1. Because the facts underlying these violations are not contested, the Court grants the Petition.

concerning who checked records, what records were checked, how any of agent reached the conclusion that Walter L. was "present in the United States without inspection," which necessarily requires drawing inferences from an absence of a record. There is no declaration describing the information reviewed or explaining what information is being stored and searched on DHS databases. The Court cannot credit Borgen's recollection in the Form I-831 absent some evidence in the record that points to how information about Walter L. that may be stored within DHS databases establishes probable cause that he is removable from the United States. *See Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (holding that a Form I-200 arrest warrant lacked probable cause because "[b]iometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic" whereas the "record contain[ed] no information showing . . . biometric confirmation of [Petitioner's] identity").

Second, Respondents did not comply with the requirements of section 287.8(c)(2)(iii). That regulation provides that, "[a]t the time of the arrest," the detaining officers must do the following two things: "(A) [i]dentify himself or herself as an immigration officer who is authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii). According to the Form I-213 document created at the time of Walter L.'s booking, after stopping Walter L.'s vehicle, ICE agents identified themselves to Walter L. (Doc. No. 8-1 at 2.) However, there is no evidence that any other officer informed Walter L. that he "[wa]s under arrest and the reason for the arrest," as required by regulation. *See id.* § (c)(2)(iii). Instead, according to

Walter L., an officer falsely claimed that the detention was because his asylum application had been pending too long. (Pet. ¶ 17.) Absent any evidence that officers informed Walter L. of the actual reason for his detention, the Court concludes that Respondents violated the plain requirements of 8 C.F.R. § 287.8(c)(2)(iii).

20. Third, the detention preceded the issuance of a warrant, and Respondents did not comply with the requirements of a warrantless arrest. The record presented establishes that Respondents took Walter L. into custody without a warrant. (Doc. No. 8-1 at 2 ("A warrantless arrest was performed on [Walter L.].") This corroborates Walter L.'s recollection that officers did not show him a warrant when he was taken into custody. (*See* Pet. ¶¶ 30, 43.) Based on this record, the Court concludes that officers took Walter L. into custody without first obtaining a warrant, and therefore, Respondents must establish that both requirements of 8 U.S.C. § 1357(a)(2) were satisfied. Respondents have not done so.

Absent a valid warrant (as here), Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Diaz-Quintana,* 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause").

Here, Respondents make no argument whatsoever that officers satisfied either prong of section 1357(a). (*See* Doc. No. 7.) Absent any argument, the Court necessarily concludes that Respondents have not established that at the time they initiated the detention, officers had probable cause to believe he was likely to escape.[7] In addition, and in contrast to the facts in *Quintana*, 623 F.3d at 1238, 1240–41, the record presented in this case establishes that Walter L. was cooperative with detaining agents, has no criminal history, and had no fraudulent identification or immigration documents in his possession. In addition, the record shows that even before initiating the encounter with Walter L., DHS had information about Walter L.'s whereabouts (e.g., via his asylum case and USCIS's issuance of a work permit). Thus, the Court concludes that Respondents violated section 1357(a)(2).

Fourth, the record indicates that Respondents violated 8 C.F.R. § 236.1(b). Form I-200 authorizes taking a non-citizen into custody only if it is issued at the same time or after the issuance of an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1); *see also, e.g.*, *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28 (S.D. Iowa 2026) (concluding ICE had no authority to detain petitioner relying on a Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where a Form I-200 "was not issued until after [petitioner's] arrest and initial detention"). Here, Respondents have

---

[7] Given the conclusion that Respondents have not established the second prong of section 1357(a)(2), the Court need not determine whether the record presented establishes the first prong of this section.

not established that the Form I-200 was issued at the same time or after issuance of the NTA. *See* 8 U.S.C. §1226(a); 8 C.F.R. § 236.1(b)(1). There is no time stamp on the NTA, and the NTA was issued at Fort Snelling, Minnesota, a separate location from where Respondents took Walter L. into custody. (*See* Doc Nos. 8-3.) Thus, the Court cannot find that the Respondents followed the requirements of section 236.1(b)(1).

For each of these independent reasons, the detention of Walter L. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (ordering release because the Form I-200 was invalid); *Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before taking a person into pursuant to section § 1226(a) is a violation of due process rights and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB),

2026 WL 478347 (D. Minn. Feb. 18, 2026); *Carlos F.P.P v. Blanche*, No. 26-CV-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sep. 21, 2026) (ordering release after finding that respondents did not follow § 1357 requirements of warrantless arrest and § 1225 did not "independently authorize continuation of [petitioner's] custody").[8]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Walter L. immediately, without conditions, and in any event no later than 4:00 p.m. CT on October 22, 2026.

2. On or before 11:00 a.m. CT on October 23, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Walter L.

3. On or before 11:00 a.m. CT on October 23, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of

[8] Although the Court need not address the question whether Walter L.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Walter L.'s favor. Walter L. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available an inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community like Walter L., who, by Respondents' own documents show had zero criminal history and to whom DHS had very recently issued a work permit. Thus, Walter L.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Walter L. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Walter L. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 21, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court